FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 NOV -7 PM 4:03
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DENVER FENTON ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 112-143 |
| | ) | |
| BRIAN OWENS, Commissioner, Georgia | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Augusta State Medical Prison in Grovetown, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis* ("IFP"), it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[1]

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

## I. BACKGROUND

Plaintiff names the following Defendants in his complaint: (1) Brian Owens, the Commissioner of the Georgia Department of Corrections ("GDOC"); (2) Augusta State Medical Prison ("ASMP"); (3) the State of Georgia; (4) the GDOC; and (5) FNU Conely, the Deputy Warden of Security at ASMP. (Doc. no. 1, pp. 1, 4.) Plaintiff first alleges that, on July 15, 2012, "[CERT] member Young" and one other unnamed individual – neither of whom are named as Defendants in the complaint – inflicted emotional and psychological damage on Plaintiff by rubbing his buttocks and asking him, "Do you feel this?" (Id. at 6.) Plaintiff asserts, without further explanation, that the alleged harassment is ongoing and is perpetrated by "mostly male staff members." (Id.)

Plaintiff next alleges that he was attacked by "Officer Curtis" in late July of 2012, and that over the course of the attack Officer Curtis re-injured Plaintiff's pre-existing back injury. (Id.) Plaintiff states his suspicion that "[CERT] DWCT Bussey" ordered Officer Curtis to carry out the attack after Plaintiff filed statements and grievances on DWCT Bussey, alleging in particular that the fact that "Curtis knew where to hit" demonstrates that the attack was premeditated. (Id.) Notably, neither Officer Curtis nor DWCT Bussey are named as Defendants in the complaint.

Presumably in relation to the above incidents, Plaintiff alleges that "in both instances [he] was sprayed [with chemical agents] for no reason" or for the purpose of punishment. (Id.)

Plaintiff next alleges that "medical refuses to do x-rays on [his] back or even access the compressed vertebrae for documentation" and, similarly, that medical personnel have not

2

acknowledged his requests related to the same. (Id.)

Finally, Plaintiff alleges that Defendant Conely acted with deliberate indifference by failing to "come speak to [him]" or to intervene by "tell[ing] the officers to stop the abuse." (Id.) Plaintiff avers that Officer Curtis's attack on him could have been avoided had Defendant Conely so intervened following the filing of Plaintiff's statements and grievances. (Id.)

As an additional note, Plaintiff states that he holds Defendant Owens, the GDOC, and ASMP responsible "due to [his] custody" and because they are the employers of the alleged culprits. (Id.) In his request for relief, Plaintiff seeks monetary damages and requests that Defendants purchase for him a variety of specific and frivolous items.[2] (Id. at 7.)

## II. DISCUSSION

### A. No Claim for Deliberate Indifference Against Defendant Conely

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that Plaintiff's complaint fails to state a claim for deliberate indifference against Defendant Conely. In his complaint, Plaintiff appears to attempt to bring claims for harassment, excessive force, and deliberate indifference to his medical needs and safety. (See doc. no. 1, p. 6.) However, of the Defendants listed in the caption, Plaintiff names only Defendant Conely in direct

---

[2]For example, Plaintiff requests that each Defendant buy him a pair of Italian shoes and boots, three custom-fit suits, and a bottle of scotch. (Doc. no. 1, p. 7.) Plaintiff further requests, among other things, that Defendants ASMP and GDOC buy him three trailer homes apiece, each of which should be accompanied by no less than two acres of land, Bermuda grass, bushes, and "show trees." (Id.)

3

connection to any of the events described in the complaint, and then only to allege that he acted with deliberate indifference in failing to respond to Plaintiff's grievance. (Id.)

To the extent that Plaintiff indeed attempts to bring a claim of deliberate indifference against Defendant Conely in his individual capacity, he has failed to state a claim upon which relief can be granted. Eighth Amendment liability for deliberate indifference to health or safety requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (noting that the deliberate indifference standard requires that a prison official disregarded an excessive risk of which he was actually aware). Here, Plaintiff does not allege that Defendant Conely had any knowledge or awareness of a risk to his safety that he then consciously disregarded. Instead, Plaintiff simply asserts that, because he had filed certain statements and grievances, Defendant Conely should have spoken to him or intervened to tell the allegedly offending officers to "stop the abuse." (Doc. no. 1, p. 6.) However, Plaintiff does not allege that those grievances put Defendant Conely on notice of any serious and imminent risk to his safety, nor that Defendant Conely had ever even seen the grievances prior to the alleged attack by Officer Curtis. Plaintiff's allegation is thus plainly insufficient to support a claim for deliberate indifference to safety against Defendant Conely.[3]

As to Plaintiff's other allegations – that he was, and continues to be, subject to harassment from prison officials not named in the complaint; that he was attacked by a prison official at the order of another prison official, neither of whom are named in the complaint; that

---

[3]To the extent that Plaintiff attempts to hold Defendant Conely responsible for the acts of his employees, Plaintiff is barred from doing so by the doctrine of *respondeat superior*, as explained infra Part II.C.

4

he was sprayed with chemicals as a form of punishment; and that he was denied medical treatment for his back – those allegations also fail to state a claim upon which relief can be granted. As explained more fully below, Plaintiff fails to allege any direct connection between any named Defendant and those claims; moreover, to the extent that Plaintiff attempts to hold Defendants responsible for the actions of their subordinates – against whom Plaintiff directs his allegations of harassment, excessive force, and denial of medical treatment – he is barred from doing so by the doctrine of *respondeat superior*.

B.  **No Causal Connection**

As noted above, Plaintiff's complaint fails to allege any direct connection between the alleged constitutional deprivations and any actions taken by Defendants Owens, ASMP, GDOC, or the State of Georgia. Plaintiff does not mention Defendants Owens, ASMP,[4] or

---

[4] Even if Plaintiff *did* mention ASMP outside of the caption and his brief assertion that it is responsible for the actions of its employees, any claim against ASMP would fail because ASMP is not an entity capable of being sued. According to Fed. R. Civ. P. 17(b)(3), the general rule is that the "capacity to sue or be sued is be determined . . . by the law of the state where the court is located. . . . ." Accordingly, in this case, Georgia law controls. The Georgia Supreme Court has explained that: "[i]n every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Georgia Insurers Insolvency Pool v. Elbert County, 258 Ga. 317, 368 S.E.2d 500, 502 (1988) (quotation omitted).

Plaintiff has not shown, and the Court is not aware of, any applicable precedent for recognizing a state prison as an entity capable of being sued for violation of § 1983, and other federal courts in Georgia confronted with similar suits have determined that jails and prisons are not legal entities subject to liability in § 1983 claims. E.g., Sebastian v. Maynard, 2010 U.S. Dist. LEXIS 86017, at *4 (M.D. Ga. July 12, 2010) (holding that county detention center "is not a legal entity that is subject to suit under 42 U.S.C. § 1983"); Bolden v. Gwinnett County Det. Ctr. Med. Admin. Med. Doctors, 2009 U.S. Dist. LEXIS 71419, at *2 (N.D. Ga. Aug. 12, 2009) ("Jails . . . are not legal entities subject to suit under § 1983 at all.").

GDOC in his complaint aside from, first, naming them in the caption of the complaint, and, second, explicitly asserting that they are each included in the lawsuit because they are responsible for the actions of their employees. (Id. at 6.) Moreover, Plaintiff does not mention the State of Georgia at any point in his complaint outside of the caption.[5] (Id.)

However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require

---

[5]Even if Plaintiff *did* mention the State of Georgia outside of the caption, the Eleventh Amendment bars a federal lawsuit against a state or one of its agencies or departments "unless the state either consents to suit or waives its Eleventh Amendment immunity," a proposition that applies equally to Defendant GDOC as a state agency. Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Furthermore, the Supreme Court has unambiguously stated that "a suit in which the State or one of its agents or departments is named as the defendant is proscribed by the Eleventh Amendment . . . . This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp., 465 U.S. at 100 (1984) (citations omitted); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978) (*per curiam*); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) (*per curiam*) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent.") As there is no indication that the State of Georgia has consented to being sued in this case, this provides another basis for Plaintiff's failure to state a claim against the State of Georgia and Defendant GDOC.

6

technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of Defendants Owens, ASMP, GDOC, and the State of Georgia and an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief based on harassment, excessive force, or deliberate indifference against those Defendants.[6]

C.     No Supervisory Liability

Next, Plaintiff's claims against all Defendants, including Defendant Conely, are also inadequate to the extent that Plaintiff is attempting to hold them responsible for the acts of named or unnamed employees of ASMP, against whom Plaintiff directs the allegations in his complaint. (Doc. no. 1, p. 6.) "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged

---

[6]Notably, the Court does not mean to suggest by its omission of Defendant Conely from the preceding section of analysis that Plaintiff has a viable claim for relief against Defendant Conely; rather, the Court has already addressed Plaintiff's attempt to allege that Defendant Conely acted with deliberate indifference in his individual capacity and found that Plaintiff failed to state a claim. See supra Part II.A.

7

constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, Plaintiff only mentions Defendants Owens, GDOC, and ASMP in the caption of the complaint and then, later, in the body of his claim in order to state in conclusory fashion that each of those Defendants is liable for the acts of its employees. Plaintiff does not mention the State of Georgia anywhere outside of the caption, and only mentions Defendant Conely to state that he should have somehow intervened based on Plaintiff's grievances. Nowhere does Plaintiff mention that Defendants Owens, ASMP, GDOC, or the State of Georgia actually participated in any purported constitutional violation. To the extent that Plaintiff alleges that Defendant Conely did so by acting with deliberate indifference in his individual capacity, that claim fails, as explained above. Similarly, Plaintiff fails to allege a "causal connection" between these Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[7] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v.

---

[7]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

8

Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has proffered no allegations to suggest that Defendants knew about any widespread abuse or that they were responsible for any custom or policy relating to his claims.[8] Thus, Plaintiff has not made the necessary showing with respect to Defendants.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 7th day of November, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[8] Notably, Plaintiff does not satisfy his burden of putting Defendant Conely on notice of a widespread problem or otherwise show that Defendant Conely was directly involved with Plaintiff's alleged claims simply by alleging that he filed "statements and grievances." See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions). That proposition is especially true where, as here, Plaintiff does not allege that Defendant Conely was even aware of those grievances.

9